GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Appellant-
Respondent, v JOEL HANDEL, Individually and as Partner
of BAER MARKS & UPHAM, et al., Respondents-Appellants.

First Department, April 27, 1993

58

## APPEARANCES OF COUNSEL

*Robert D. Meade* of counsel *(Bleakley Platt & Schmidt,* attorney), for appellant-respondent.

*Thomas E. Albright* of counsel *(Baer Marks & Upham,* attorneys), respondents-appellants *pro se.*

## OPINION OF THE COURT

WALLACH, J.

On October 30, 1977, in the early morning, Richard T. Blitz, a 42-year-old businessman from East Rockaway, New York, was found dead by members of his vacation party in the shallow end of a small resort hotel swimming pool in Acapulco, Mexico. Almost immediately a controversy developed with respect to the cause of that death. A physician and hotel guest from Buffalo, Dr. William McIntosh, examined the body at poolside and expressed the view that Mr. Blitz' death was attributable to a heart attack. However, the Coroner for the judicial district of Tabasco, Mexico, Dr. Abraham Cervantes, certified the same day that the cause of death was asphyxiation by drowning. They were only the forerunners of other experts to line up on both sides of the issue.

Guardian Life Insurance Company (Guardian), now the plaintiff in this severed third-party action, was one of four insurance companies that had issued insurance policies on Mr. Blitz' life providing for accidental death benefits, and when the designated beneficiary, the widow Barbara Blitz, presented her claims thereunder, the carriers paid out the ordinary benefits but rejected the double indemnity (accident) claims.

The litigation which ensued followed a somewhat unusual

course. The carriers, including Guardian, demanded an autopsy in aid of their heart attack (nonaccidental death) defense. In response, Mrs. Blitz, represented by her attorney, defendant Joel Handel, and his law firm, defendant Baer Marks & Upham (Baer Marks), refused to consent to an autopsy and, in accordance with the then recent Court of Appeals decision in *Saperstein v Commercial Travelers Mut. Acc. Assn.* (36 NY2d 79), commenced an action for a declaratory judgment that the carriers' autopsy demand was unreasonable, and that the Blitz family's rejection was not a breach of the policy cooperation provisions. In July 1978, Justice Arnold Fraiman denied the carriers' summary judgment motion to dismiss, and the matter was duly tried in February 1979 before Justice Martin Evans and a jury, resulting in a verdict and judgment in favor of the Blitz beneficiaries.

It appears that even though Guardian paid the accident claim with accrued interest, the Blitz beneficiaries commenced a second action against Guardian to recover damages for the intentional infliction of extreme emotional distress, occasioned by the autopsy demand, and the relatively intransigent stance maintained thereafter by Guardian. Guardian countered with a third-party action whose viability as a separate severed action is now before us on these cross appeals, the former main action by the Blitz beneficiaries having been discontinued and withdrawn.

The complaint alleges four causes of action against Handel and Baer Marks, and 14 more against Baer Marks alone. Four additional causes of action, asserted against "all defendants", were withdrawn. The IAS Court granted summary judgment to defendants on the four causes of action against Handel and Baer Marks, and the first 12 causes of action against Baer Marks alone. On the 13th and 14th causes of action against Baer Marks alone, the court denied both defendants' motion and Guardian's cross motion for summary judgment. Both sides have appealed.

At the core of Guardian's complaint are allegations that defendant Handel and his law firm, in pursuing both the declaratory judgment and the subsequent tort action, committed a massive fraud both upon Guardian and the courts. (Each fraud count of the complaint is immediately followed by a correlative claim for treble damages under Judiciary Law § 487.) Contrary to the motion court, we find triable issues as to the first 12 causes of action stated against Baer Marks alone.

■ Mr. Handel was a member of the vacationing party with the Blitz couple, and was present when decedent's body was removed from the pool. Guardian adduced proofs, in opposition to defendants' motion for summary judgment, that the embalming certificate issued on the date of death in Mexico was a fraud, and that Mr. Handel either knew it then or very shortly thereafter, as did other members of the Baer Marks law firm. If such knowledge were to be established at trial, and that knowledge was consciously withheld from Justice Fraiman who ordered the declaratory judgment trial, the trier of fact could draw the inference, vigorously urged by Guardian, that the declaratory judgment action was a sham, designed simply to delay the autopsy until the unembalmed remains would have sufficiently decomposed to make an autopsy worthless. When read in light of these contentions, the first 12 causes of action against Baer Marks alone allege a continuing series of false representations and withholding of crucial information from the court, together with other essentials of a viable cause of action for fraud (see, *Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403). It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment (see, *Donovan v Aeolian Co.,* 270 NY 267, 271), which is itself the equivalent of affirmative misrepresentations of fact (*Nasaba Corp. v Harfred Realty Corp.,* 287 NY 290, 295). This is especially true where an officer of the court owes such an obligation to the tribunal (Code of Professional Responsibility DR 7-102 [A] [3] [22 NYCRR 1200.33 (a) (3)]). Since Judiciary Law § 487 (1) interdicts misconduct by an attorney involving "deceit * * * with intent to deceive the court or any party", the correlative causes of action grounded upon that statute raise triable issues as well (see, *Singer v Whitman & Ransom,* 83 AD2d 862).

■ Despite the foregoing, we do not disturb the dismissal of the first cause of action (and the correlative statutory second cause of action) asserted against Mr. Handel and the firm, based on his allegedly false testimony before Justice Evans denying knowledge of nonembalming until the eve of trial of the declaratory judgment action. The issue on that trial, as framed by Justice Fraiman, was an extremely narrow one: whether the carriers acted reasonably, based on information they had in their possession, in demanding an autopsy. There was no showing by the carriers that any representation or silence by Mr. Handel played any part in the issuance of that

demand, and Justice Evans specifically precluded, as irrelevant, any exploration by way of cross-examination or otherwise pertaining to Mr. Handel's knowledge. Thus, the absence of *reliance* by Guardian, the other carriers or the court is fatal to the use of Mr. Handel's testimony as the gravamen of a fraud cause of action.

This flaw in the first cause of action, as well as the fact that the Blitz family's resistance to an autopsy in the declaratory judgment action was vindicated, does not bar Guardian's other fraud causes of action which operate in a far more expansive context. As Justice Breitel wrote for this Court in *Burbrooke Mfg. Co. v St. George Textile Corp.* (283 App Div 640, 643-644), in a setting which bears similarities to the case now before us, "On the one hand, there is the profound and embedded philosophy that decided issues remain decided, and that litigation come to an end. On the other hand, there is the equally compelling policy that fraud be frustrated, and consequently that *one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor, but by successful concealment of a larger and basically different scheme.* If the total objective of the scheme was the determined issue, then there is a bar; but if the total objective was greater than the determined issue, and the determined issue was but a step or a part of the total objective, then there is no bar. In the one case the bar is that of *res judicata.* In the other case there lies an action for fraud independent of, extrinsic to, or antecedent (but not merely in the sense of chronological time) to the prior judgment." (Emphasis added.)

■ Guardian has withdrawn its appeal from the dismissal of its third and fourth causes of action against Handel and the firm, and these need not further detain us except to deny defendants' application on appeal for the imposition of sanctions under 22 NYCRR 130-1.1 (a). This claim, raised as the first point of defendants' main brief in this Court, lies ill in the mouth of parties who have escaped any sanction for their pursuit of a tort action of dubious merit, which was withdrawn only after eight years of vigorous prosecution.

■ Defendants' argument that Guardian's causes of action based upon the Judiciary Law are time barred is without merit. The six-year limitation for fraud actions (CPLR 213 [8]) is controlling, and not the three-year period for actions upon a statute imposing a penalty or forfeiture (CPLR 214 [2]). For the purpose of limitation analysis, a remedy is considered to

have been created by statute if it provides for a unique form of liability unknown at common law *(State of New York v Bronxville Glen I Assocs.,* 181 AD2d 516). Liability to a non-client third party for an attorney's misconduct was recognized in New York case law long before the 1965 enactment of Judiciary Law § 487 *(see, Dallas v Fassnacht,* 42 NYS2d 415 [Sup Ct, NY County]).

Finally, we affirm so much of the motion court's order as denied defendants' application to dismiss Guardian's 13th and 14th causes of action against the firm, and further denied Guardian's application for summary judgment thereon. Material issues of fact exist concerning whether Baer Marks failed properly to convey the terms of Guardian's settlement offer to Mrs. Blitz following the conclusion of the 1979 declaratory judgment action. The depositions of Mrs. Blitz and her son do not resolve the question of whether the full terms of Guardian's purported second settlement offer to Mrs. Blitz were appropriately transmitted, and defendants' averments simply provide a factual dispute for trial.

Accordingly, the order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered July 18, 1991, which granted defendants' motion for summary judgment to the extent of dismissing plaintiff's four causes of action against defendants Handel and Baer Marks and the first 12 causes of action against defendant Baer Marks alone, while denying cross motions for similar relief regarding the 13th and 14th causes of action against Baer Marks, should be modified, on the law, to deny the motion as to the first 12 causes of action against Baer Marks alone, and otherwise affirmed, without costs.

SULLIVAN, J. P., KUPFERMAN, KASSAL and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered July 18, 1991, which granted defendants' motion for summary judgment to the extent of dismissing plaintiff's four causes of action against defendants Handel and Baer Marks and the first 12 causes of action against defendant Baer Marks alone, while denying cross motions for similar relief regarding the 13th and 14th causes of action against Baer Marks, is modified, on the law, to deny the motion as to the first 12 causes of action against Baer Marks alone, and otherwise affirmed, without costs.